FRANK J. HAHN, Plaintiff-Appellee, *v.* NORFOLK AND WESTERN RAILWAY COMPANY, Defendant-Appellant.

Fifth District No. 77-196

Opinion filed April 17, 1978.

EBERSPACHER, P. J., dissenting.

Thomas W. Alvey, Jr., of Pope and Driemeyer, of Belleville, for appellant.

Charles W. Chapman, of Chapman & Chapman, of Granite City, for appellee.

Mr. JUSTICE GEORGE J. MORAN delivered the opinion of the court:

Defendant Norfolk and Western Railway Company appeals from a judgment of the circuit court of Madison County entered on a jury verdict in favor of the plaintiff Frank Hahn for personal injuries sustained while an employee of defendant. Plaintiff brought this negligence action pursuant to the Federal Employers' Liability Act (45 U.S.C. §51 *et seq.*).

On May 11, 1973, plaintiff, a railroad car inspector in the defendant's employ, reported to work at the Luther Yard in St. Louis for his usual 11 p.m. to 7 a.m. shift. Customarily two inspectors and two airmen were assigned to this shift; however, due to cut-backs, etc., only one other worker, an airman, reported to work that night.

Among the prescribed duties of the plaintiff was the inspection of all arriving railroad cars to ascertain that all plug doors were closed. There was abundant evidence that a plug door is much heavier than a regular box car door, weighing from 500 to 1000 pounds. These doors are situated on rollers and tightly seal the compartment when closed. The normal procedure was for the two inspectors to walk along opposite sides of the stationary cars inspecting for various abnormalities, including open plug doors. Upon finding an open door, the inspector was instructed to first attempt to close it himself. Because of the size and weight of the doors this was a difficult task. Should the inspector be unable to close the door

without help, the co-inspector would cross over the track to assist. Plaintiff testified that while one worker held the lock open with one hand and pushed with the other, the second worker would push with both hands. Occasionally, a fork-lift was required to provide the sufficient strength to close a plug door.

Prior to proceeding to the yard on the night in question, plaintiff remarked to the foreman that only he and Virgil Hensley, an airman, had reported for work on the third shift. Plaintiff requested additional help from the second shift foreman who acknowledged that the general foreman was aware of the situation but nevertheless instructed the plaintiff to conduct his usual inspection and Hensley to "work air." Equipped with a lantern, a metal scratching hook, and a two-way radio, plaintiff set out on his inspection tour of the yard. At approximately 1:40 a.m. plaintiff discovered an open plug door. After his first attempt to close the door failed, plaintiff placed the scratching hook at one end of the car to hold the lock open and pulled at the door from the center of the car. When this method also proved unsuccessful, plaintiff secured a piece of wood to keep the lock open and pushed the door three times. With the third push the door closed but the ballast rolled under plaintiff's feet causing him to tumble headfirst on the ground. Since plaintiff immediately experienced considerable pain in his neck and back, he notified the foreman in charge of locomotives who arranged to have plaintiff transported to the hospital. Upon examination at the hospital emergency room, plaintiff was given pain pills and instructed to remain at home for a few days. After consulting his family physician for the gradually worsening pain in his back and neck, plaintiff was finally referred to a neurosurgeon in 1975. Shortly thereafter, two successful operations known as facet rhizotomies were performed on the lumbar and cervical regions of plaintiff's spine. On this evidence the jury returned a verdict in favor of the plaintiff in the amount of $115,000.

The defendant contends that the trial court erred in several respects. First it contends that it was error for the court to have directed a verdict at the conclusion of all the evidence in favor of the plaintiff on the issue of contributory negligence. While we agree that such matters are usually for the jury to determine, there are instances when the evidence, viewed in the light most favorable to the defendant, still overwhelmingly favors the plaintiff that no contrary verdict could ever stand. (*Thatch v. Missouri Pacific R.R. Co.*, 47 Ill. App. 3d 980, 362 N.E.2d 1064; *Pedrick v. Peoria & Eastern R.R. Co.*, 37 Ill. 2d 494, 229 N.E.2d 504.) We believe this is such a case.

While there was considerable evidence adduced at trial that the defendant had expended 6.5 million dollars in reconditioning the Luther Yard facility, including the installation of the new ballast along the tracks,

there was a total lack of evidence that plaintiff had in any manner contributed to his own injury. Defendant's reliance on *Thatch v. Missouri Pacific* is misplaced. There we held that under facts quite dissimilar to this case defendant had established a submissible issue as to plaintiff's contributory negligence. The plaintiff in *Thatch* testified that while walking on a concrete platform he was aware of a forklift moving closer to pass him but nevertheless failed to move over far enough to avoid being struck by the machine. There is no evidence in this case that had plaintiff Hahn acted differently he would not have fallen on the rock. In *Dixon v. Penn Central Co.*, 481 F.2d 833 (6th Cir. 1973), the court held that the trial court had erred in submitting the issue of contributory negligence to the jury in an FELA action where there was no evidence that had the plaintiff properly gripped a lever on the machine he would not have been injured.

■■ The complaint in this case alleged that the defendant was negligent, *inter alia*, in failing to furnish plaintiff with a reasonably safe place to work and in failing to furnish plaintiff with adequate assistance with which to do his work. Plaintiff testified that while performing his assigned task of closing the open plug door under the conditions provided that night, *i.e.*, without the assistance of another inspector, he was injured. There was considerable testimony as to the inferior footing afforded by the ¾" rock used in plaintiff's work area, vis-a-vis the small "pea gravel" used in the area where the switchmen work. Finally, there was evidence that defendant had previously received other complaints concerning the dangerous propensity of the rock in this particular area. Defendant, on the other hand, produced no evidence that plaintiff had been inattentive or otherwise negligent in actually pushing the plug door. Its only assertion of contributory negligence was that plaintiff should have radioed Hensley for assistance. However without some evidence that had plaintiff requested assistance Hensley would have been required to respond, we think the defendant failed to present a submissible issue for the jury on contributory negligence. In fact, there is no reason he would have called for assistance as he could not have been charged with knowledge that the ¾" rock would "roll" as he was attempting to close the door. In fact, it would appear that no assistance was needed as the door did close.

The defendant next contends that the trial court erred in excluding certain evidence relating to a prior work related injury to plaintiff's back for which plaintiff was compensated by the defendant railroad. In its answer, defendant interposed as an affirmative defense that plaintiff's injuries were not caused in whole or in part by the alleged negligent acts set forth in the complaint. In 1966 plaintiff suffered an injury to his back which caused him to be absent from his work for 12 to 14 months. At that time plaintiff consulted Dr. Deyton, since deceased, and his associate Dr.

Schaerer, who treated plaintiff in 1975 and whose deposition was read into evidence at trial. In 1967 Dr. Schaerer conducted a discogram and myelogram on plaintiff, both with negative results. Plaintiff recovered and returned to work in 1967. From 1968 until 1973 when this accident occurred, plaintiff missed no work, and consulted no doctors concerning his back.

Plaintiff made a pretrial motion in limine to exclude evidence of the prior injury as well as the subsequent claim and its settlement. The trial court denied plaintiff's motion insofar as it related to the prior injury; however, it later ruled that evidence concerning the claim and settlement arising out of that incident would be excluded.

■■ We consider first defendant's allegations concerning Dr. Deyton's report. Defendant argues that since Dr. Schaerer, the treating physician, kept Dr. Deyton's report in his file, the findings contained in the report are admissible. In our opinion the trial court properly excluded Dr. Schaerer's testimony concerning this report since there was no evidence that Dr. Schaerer had relied upon Deyton's report in diagnosing or treating the plaintiff. Furthermore, Dr. Schaerer stated that the injury in 1966 was a "one time affair which cleared up." Under these circumstances, the court correctly excluded that portion of Dr. Schaerer's testimony concerning the Deyton report.

At trial defendant was allowed great latitude in examining plaintiff relative to his prior injuries. Defendant now argues, however, that the medical report of Dr. Deyton should have been admitted into evidence. We disagree. Our review of the record in this case leaves us with a serious doubt that the report was properly authenticated. Moreover, the report was clearly hearsay and as defendant has failed to bring it within one of the exceptions to the hearsay rule, the report was properly held to be inadmissible.

■■ ■ Defendant also offered evidence of another doctor's findings concerning plaintiff's injuries of 1966. It seems that a Dr. Lansche had examined the plaintiff prior to his return to work in 1967. Once again defendant sought to introduce a medical report (Lansche's) through the testimony of another doctor, Dr. Wagner, who expressly denied that he relied upon the report. In addition, Dr. Wagner, who testified on defendant's behalf at trial, was merely an examining physician and as such could only testify as to objective symptoms. (*Powers v. Browning*, 2 Ill. App. 2d 479, 119 N.E.2d 795.) Furthermore, in this instance, there is no indication that Dr. Lansche was unavailable to testify at trial. Thus, we feel the evidence was properly excluded.

■■ Defendant further contends that it was error to exclude evidence of the plaintiff's prior claim and settlement. We fail to understand how evidence that plaintiff had been compensated by defendant for a prior

injury could be relevant to any of the issues of this case. Defendant has cited no cases and we have found none in support of its position that evidence of plaintiff's claim and settlement is admissible under the circumstances. Nor has defendant explained how the admission of the release into evidence would tend to resolve any of the underlying issues of the case. The burden was on the defendant to show a connection with the prior injury. (*Scheck v. Evanston Cab Co.*, 93 Ill. App. 2d 220, 236 N.E.2d 258.) The jury was instructed that if it found that the plaintiff's injuries were not caused in whole or in part by the allegations set forth in the complaint, then it should render a verdict in favor of the defendant. Although the defendant was afforded great latitude in examining plaintiff and plaintiff's witnesses concerning the 1966 injury, it was unable to causally link the two injuries. We find no error in the exclusion of any of the above-mentioned evidence.

Defendant next contends that the court erred in refusing to strike that portion of Dr. Schaerer's testimony relating to what the witness termed a thoracic outlet syndrome or chronic back pain. During the evidentiary deposition, plaintiff's counsel questioned the doctor concerning his evaluation of any residual disability. The doctor responded that seven months after the rhizotomies plaintiff experienced an episode of pain in his left shoulder which radiated into three fingers on the left hand. The witness explained that this condition is known as a thoracic outlet syndrome and that it is precipitated by reaching overhead. Defense counsel made no objection to this continuous line of questioning. Finally, the following colloquy occurred between Dr. Schaerer and plaintiff's counsel:

"Q: Do you have an opinion, first, as to whether or not he [plaintiff Hahn] will continue to have that type of difficulty in performing certain activities, Dr. Schaerer, again to a reasonable degree of medical certainty?

MR. ALVEY: Well, I'm going to object to that question unless it is specified what condition you are talking about. I think there's been about three or four different conditions. Would you clarify what conditions you're talking about?

Q: I'm talking about the after effects of the facet conditions that Dr. Schaerer treated him for.

MR. ALVEY: All right."

■■ Although we agree with defendant that a causal connection between the May 1973 accident and the thoracic outlet syndrome had not been clearly demonstrated, we believe that defendant waived this error in failing to make an objection at the time of the deposition. Supreme Court Rule 211(c)(1) provides that objections to the admission of testimony which might have been corrected if made during the taking of the

deposition are waived by a failure to present them at that time. (Ill. Rev. Stat. 1975, ch. 110A, par. 211(c)(1); *Bireline v. Espenscheid,* 15 Ill. App. 3d 368, 304 N.E.2d 508; *Moore v. Jewel Tea Co.,* 46 Ill. 2d 288, 263 N.E.2d 103.) Defendant may not acquiesce in allowing the uncertainty of a causal connection between plaintiff's accident and the thoracic outlet syndrome to persist and later seek to take advantage of that uncertainty. In this instance, had the defendant made a proper objection further questions could have been asked to obviate any ambiguity concerning the causal connection.

■■ ■ Finally, defendant contends that certain remarks made by plaintiff's counsel during closing argument were especially prejudicial to the defendant. The objectionable comment concerned the potentially negative effect the instant suit might have upon plaintiff's continued employment by the defendant railroad. Counsel stated:

"And you can take all of these things into account, what he told you, the manner he told you, and the fact he worked and has worked, and he's worked for the railroad for twenty years and hopefully he is going to be able to work for another twenty, but we don't know what's going to happen when this * * * we don't know what happens to Frank Hahn when the case is over. He goes out of here tonight after you reach your verdict and bring your verdict in, and he goes back to work hopefully with no consequences from the railroad."

Defense counsel's objection to this remark was promptly sustained by the court. In addition, the jury was reminded on several occasions that argument of counsel did not constitute evidence and finally IPI Civil No. 1.01 was given instructing the jury to disregard testimony to which an objection had been sustained. There is no doubt that counsel's argument was wholly improper. Yet not all errors occurring at trial require reversal by an appellate court. Here the error was immediately cured by the court in sustaining defendant's objection and by instructing the jury in the language of IPI Civil No. 1.01. Defendant argues that the prejudicial effect of the statement was not rendered harmless as shown by the excessive verdict. We are unable to say that the amount awarded by the jury in this case is excessive in light of the nature and permanency of the plaintiff's injuries as explained by Dr. Schaerer. In short, the error in this case is insufficient to justify reversal of this cause. Accordingly we affirm the judgment of the circuit court of St. Clair County.

Affirmed.

KARNS, J., concurs.

EBERSPACHER, P. J., dissents without opinion.