## CIRCUIT COURT OF THE CITY OF ROANOKE

Ronald L. Bowles

    v.

Norfolk and Western Ry. Co.

September 9, 1999

Case No. CL97-825

BY JUDGE ROBERT P. DOHERTY, JR.

    In this F.E.L.A. case, Defendant railroad has moved to set the jury verdict aside, claiming numerous errors by the trial judge. The case was tried on March 9, 1999. An ice and snow storm had struck Roanoke the night before, and snow was still falling when counsel arrived to start the trial. Two jury trials were to start that morning, one criminal and the other civil. Many of the citizens who had been summonsed as jurors failed to arrive, calling instead to advise that they could not travel on the slick roads. Sheriff's deputies went out in four wheel drive vehicles to bring in as many prospective jurors as they could reach. On at least one occasion, they were required to physically carry a juror from her house to the four wheel drive vehicle. By 10:30 to 11:00 a.m., approximately forty veniremen had made it to the courthouse. They represented two separate panels previously summonsed, one for the criminal trial and one for this civil trial. These panels were combined for the criminal trial, and after that jury had been chosen, the remaining panelists, approximately twenty-eight people, were combined into one panel for the F.E.L.A. case.

    During the trial of this case, the Plaintiff testified that he was injured while manually compressing shock absorbers on a train car. He said that the

operation he was required to perform was awkward, unsafe, difficult, and that it required him to get into a dangerous position and use extreme exertion. One of Plaintiff's experts testified that the work task assigned to the Plaintiff was unsafe, had a potential for injury, and should have been accomplished by use of a mechanical device. Another of Plaintiff's experts prepared a calculations chart using a formula and giving the mathematical results of Plaintiff's past, present, and anticipated future lost earnings. The chart was blown up to poster size and presented as a trial exhibit. Defendant vigorously challenged each of Plaintiff's assertions by both cross-examination and the presentation of its own witnesses. Defendant's case included evidence that the operation of compressing shock absorbers on a train had been done manually for approximately ten to fifteen years without injury and that the current method of performing the work was safe.

The jury returned a verdict in favor of the Plaintiff, and the Defendant has moved to set that verdict aside claiming that:

1. Plaintiff failed to prove negligence;

2. Defendant did not receive a list of prospective jurors pursuant to § 8.01-353;

3. Plaintiff's ergonomics expert testified to matters within the common knowledge of the jury; and

4. Plaintiff's economist was allowed to have his testimony reinforced in the minds of the jury by introduction of the lost earnings calculations chart.

Plaintiff argues in opposition to these claims of error. The Court agrees with the Plaintiff.

## I. *Negligence*

The requirement for proof of negligence in an F.E.L.A. case is no different than the requirement for such proof in any other type of negligence case. F.E.L.A. cases differ from the ordinary tort action, not on the issue of negligence, but rather on the question of causation. If a railroad is negligent in some way and that negligence contributes in whole or in part, even in the slightest, to its employee's injury, then the railroad becomes liable for some or all of the employee's damages. Assumption of the risk is not a defense, and the contributory negligence of the employee cannot be used as a bar to recovery but rather is used to proportionately reduce the damages his employer must pay. *Norfolk & W. Ry. v. Johnson*, 251 Va. 37 (1996).

The railroad conducts daily safety meetings with its employees for the purpose of educating them and reminding them of the strict safety rules and regulations that are in effect. These rules must be followed in order to prevent

employee injury in the dangerous business of railroading. Employees are encouraged to report unsafe conditions and practices, both at these meetings and to their supervisors. The purpose of this is to allow the railroad to become aware of problems, and if necessary, correct them so injury does not occur. Upon investigation, they can choose to do nothing, they can make changes so that the danger no longer exists, or in the alternative, they can warn employees of the dangers, as well as develop safe procedures or equipment to protect the employee. This duty to safeguard workers is incumbent upon a railroad under the Federal Employer's Liability Act but is not absolute. A railroad is not an insurer, it is an employer. *Norfolk Southern Ry. v. Trimiew*, 253 Va. 22 (1997), citing *Johnson, supra*.

In this case, the Plaintiff alleged that the particular job he was assigned had a difficult-to-perform and dangerous component, that of compressing the shock absorber on a train car by hand. He testified that he told his supervisors about this problem, and at least one of them said that a poor practice existed regarding the procedure used by the railroad to compress the shock absorbers. Plaintiff himself told the jury the steps he went through to compress shock absorbers, and he explained why he thought it was too dangerous to do without a specially-designed tool. Plaintiff's expert testified that the procedure was unsafe and required the use of some sort of mechanical device to protect the worker. Defendant argued that the procedure was not unsafe, that an iron bar was available to assist the worker in compressing the shock absorber, and that the particular task at which Plaintiff had been injured was one that had been performed multiple times per day for many years without injury. The procedure itself was explained to the jury in great detail, by a number of witnesses, using pictures, words, and gestures. The jury became armed with the necessary information to determine if the procedure followed was safe or not. The question for the jury was whether or not the railroad was negligent in failing to thoroughly inspect the procedure Plaintiff had complained about, or, having inspected, failed to take the necessary steps to make the operation more safe, and/or failed to design and make a specific lever or tool that would aid in the task of compression, without placing the employee in harm's way. The determination of fault, in the face of contradictory evidence, was an issue for the jury. Defendant's request for a directed verdict on the negligence question is denied.

## II. *Jury Panel List*

Defendant argues that because all of the potential jurors summonsed for its trial did not appear, and instead, additional jurors who had been

summonsed but were not used in a criminal trial were added to the jury panel list for this trial, that a violation of § 8.01-353, Code of Virginia (1950), as amended, occurred and that a new trial should be granted. The Court notes that the Defendant is not claiming that it received an unfair trial or that the jurors were unqualified or biased, and neither is the Defendant claiming a constitutional violation of its right to a jury trial. It is simply arguing that all of the jurors on the jury panel list it received prior to trial did not appear, and additional jurors were used in their place.

In fact, the Defendant was given the entire master list of jurors who were available for the whole term of court. Those veniremen summonsed specifically for this trial were highlighted or checked on that list. Many of those potential jurors who were summonsed were unable to appear because of inclement weather. Since here were not sufficient numbers of veniremen in either of the two jury panel lists to allow either the criminal case or the F.E.L.A. case to proceed, the panels were combined and sent to the criminal trial. When that jury was chosen, the remaining panelists were made available for the civil case. The Court assumes, but does not know, that some of the jurors originally designated on the jury panel list given to the Defendant sat as jurors in the criminal trial. The possibility exists that all of the potential jurors on the Defendant's jury panel list who were able to appear in court that day were in fact present for jury selection at this trial and that none were used in the criminal trial. The only matter that is certain is that all of the potential jurors listed on the jury panel list did not appear for the civil trial, and the Court supplemented the list by using the additional veniremen who had been summonsed for the criminal trial.

In support of his argument for a new trial, Defendant cites a criminal case, *Harmon v. Commonwealth*, 212 Va. 442 (1971), that dealt with the interpretation of specific criminal statutes that are now repealed and that involved the statutory number of jurors to be called in a criminal case and the manner in which those jurors were to be summonsed. The Court finds some guidance in that case but relies to a greater extent on the statutory directives set forth in §§ 8.01-353, 8.01-354, and 8.01-355. The Code requires that upon request, a party be given a list of the veniremen summonsed for a particular trial. That was done. The fact that all of those veniremen did not appear for the trial, whether because of inclement weather or because they were used as jurors in a criminal trial, does not make the list inaccurate. If that logic is used, no jury trial could ever proceed if one of the veniremen who was summonsed for jury duty failed to appear. The jury panel list given to the Defendant was an accurate recitation of those potential jurors summonsed for the civil trial. They were not all available for trial, whether because of the weather

conditions or because of their being used as jurors in a criminal case, if in fact any were so used. The Court ordered the Sheriff to bring the remaining veniremen to the civil trial so that a jury could be chosen. That procedure is in accordance with a fair reading of the provisions of § 8.01-355 and is used when sufficient jurors cannot be obtained for the trial of a case. In the alternative, using the Defendant's logic that it was supplied with an erroneous or inaccurate jury panel list, the provisions of § 8.01-353 apply, and such inaccuracies or errors in the jury panel list "shall not be grounds for a mistrial." The Defendant's request for a new trial based on a violation of § 8.01-353 is denied.

### III. *Expert Testimony Addressed Matters within the Common Knowledge of the Jury*

Dr. Shennick was found by the Court to be an expert in the field of ergonomics, work injury management, and vocational rehabilitation. His field of study, his expertise, the tests he performed, and his resulting conclusions and opinions were vigorously challenged by the Defendant, both in motions in limine and at trial. Some of the Defendant's objections were sustained and others were not. The Court's reasoning for its decisions were painstakingly recited on the record. This is the third time these issues have been addressed. Dr. Shennick testified that from an ergonomic standpoint, the work task assigned to the Plaintiff was a dangerous task to perform. He explained that the manner in which it was accomplished placed the worker in an awkward position and required that forces be exerted in such a manner that injury could easily occur to the employee. He opined that the work task could be accomplished in a safe manner by the use of a mechanical device, such as a specially-designed lever. He concluded, based on his studies, his observations, his tests, his background, his education, and his training, that the manner in which the Plaintiff was required to compress the shock absorber was unsafe from an ergonomic standpoint. Those conclusions were not within the common knowledge or experience of the jurors. Defendant's motion for a new trial based on Dr. Shennick's testimony is denied.

### IV. *Summarized Testimony in Chart Form*

The final objection by the Defendant is based on the case of *Norfolk & W. Ry. v. Puryear*, 250 Va. 559 (1995). That case stands for the proposition that it is error for a Court to allow a witness to summarize his oral testimony on a document or chart which is then used by the jury during deliberation. The

reason for this ruling is that delivery of such a chart to the jury might cause them to place greater emphasis on the witnesses' testimony because it is being repeated to them on the exhibit. Defendant alleges that in this case, the chart prepared by the Plaintiff's expert economist is a summary of his oral testimony and that error occurred when the chart was made an exhibit and delivered to the jury. The Court finds otherwise.

The chart to which Defendant objects contains separate calculations in six different categories dealing with projected future wage losses and their present dollar values over a 28-year period. These numerous calculations are the mathematical results of a formula given to the jury by Dr. Cobb, the Plaintiff's expert economist. To arrive at those various numbers, Dr. Cobb took into consideration the historical inflation rate, interest rates, anticipated increases in benefits set forth in collective bargaining contracts, potential retirement ages, Plaintiff's present and past earnings, and the various fringe benefits provided by the railroad. While all mathematical calculations are basic, the application of the formula in this case to the many variables and the ability to determine what numbers should be accepted as given fall well within the expert's realm. Dr. Cobb prepared a table of statistics using his calculations and using the formula he explained to the jury. The table or chart introduced into evidence did not summarize his testimony. He did not testify to all of the numbers. Instead he told the jury how the formula worked and did all of the calculations for them. The chart contained those calculations. It was helpful to the jurors. They understood the basis of the calculations and could refer to the table to determine the result of a specific calculation. The Defendant's motion for a new trial based on the admission into evidence of the table of calculations prepared by the Plaintiff's expert economist is denied.

For all of the reasons herein stated, Defendant's motions for a mistrial, for a directed verdict, and for a new trial are denied.