Present:  All the Justices

NORFOLK SOUTHERN RAILWAY COMPANY

v.  Record No. 000069     OPINION BY JUSTICE ELIZABETH B. LACY
                                        January 12, 2001
RONALD L. BOWLES

            FROM THE CIRCUIT COURT OF THE CITY OF ROANOKE
                    Robert P. Doherty, Jr., Judge

        Ronald L. Bowles filed a motion for judgment pursuant to

the Federal Employers' Liability Act (FELA), 45 U.S.C. §§ 51-

60, alleging, inter alia, that Norfolk Southern Railway

Company[*] (NS) was negligent in failing to provide a reasonably

safe workplace.  Bowles sought recovery for injuries he

asserted resulted from NS's negligence.  Following a trial,

the jury returned a verdict in favor of Bowles for $1,500,000.

The trial court denied NS's motion to set aside the verdict

and entered judgment in accordance with the jury verdict.  On

appeal, NS asserts that the trial court erred in admitting

certain opinions rendered by an expert witness, in refusing to

strike Bowles' evidence on the issue of NS's primary

negligence, and in refusing to grant a continuance or new

trial based on alleged irregularities regarding provision of

---

        [*] At the time of filing, the defendant's corporate name
was Norfolk and Western Railway Company.  During the course of
litigation the name was changed to Norfolk Southern Railway
Company.  Pursuant to a motion granted January 5, 2001, we
refer to the defendant as Norfolk Southern Railway Company in
this opinion.

the jury panel list.  For the following reasons, we reject NS's claims and will affirm the judgment of the trial court.

## I.   Facts

Bowles was employed by NS in the wheel machine building at the Shaffer's Crossing shop in Roanoke.  For approximately twenty-six years, Bowles was a shift operator of the wheel truing machine.  When wheels of a locomotive become deformed through use, cutting edges on the machine return the wheels to a uniformly round condition.  In order for the machine to cut the wheels, shock absorbers that are mounted on the outside of the wheels must be moved out of the way.  The process involves pulling the locomotive through the wheel truing machine on specially constructed rails which raise the wheels of the locomotive to approximately waist height, allowing the machine operator access to the shock absorbers.

The operator must remove four bolts that hold a rectangular plate to the outside of the axle of a wheel set. The bottom end of the shock absorber is attached to the plate. The operator pivots the shock absorber and plate up and out of the way, keeping them in that position while the wheels are being cut.  The shock absorber and plate are then lowered, and the four bolts are reinserted.

Because the shock absorber expands slightly when disengaged from the axle, the operator must compress the shock

2

absorber in order to realign the plate with the bolt holes. If an operator does not want to apply manual pressure when compressing the shock absorber and realigning the plate, he can use a three-foot long steel pry bar to lever the plate into position or call for assistance.

On June 23, 1993, as Bowles was manually compressing a shock absorber and replacing the first bolt, he felt a pain in his right lower back and upper hip. Bowles ultimately underwent surgery for a herniated disc and is physically unable to return to his former job.

## II. Expert Opinions

Code § 8.01-401.3 allows a qualified expert witness to testify in the form of an opinion if the expert's specialized, technical, or scientific knowledge "will assist the trier of fact to understand the evidence or to determine a fact in issue." Bowles' expert, Dr. Michael D. Shinnick, testified that, based on a reasonable degree of professional certainty, "the work task was unsafe and had a potential for injury" and "[a] mechanical device should have been employed to perform the task of compressing the shock absorber." Dr. Schinnick's opinions were inadmissible, NS asserts, because they "did not offer the jury any scientific, technical or specialized knowledge that was beyond the jury's knowledge, or that assisted the jury to understand the evidence." This is

particularly true, NS argues, because witnesses testified at trial regarding the mechanics of the work task, a full size model of the relevant portion of the locomotive was in the courtroom, Bowles demonstrated his actions at the time of the injury, and photographs of the work site, the investigative reports, and accident reports were admitted as exhibits. Thus, NS maintains, the jury had before it the same information as that utilized by Dr. Shinnick in forming his opinions.

The fact in issue in this case was whether the employer provided a safe workplace. Dr. Shinnick was qualified as an expert in ergonomics analysis and vocational assessment. Ergonomics is the study of the relationship between people and the equipment or the systems they use, Norfolk & W. Ry. Co. v. Johnson, 251 Va. 37, 41, 465 S.E.2d 800, 804 (1996), and the ergonomics analysis performed by Dr. Shinnick focused on the work task of compressing the shock absorber. On the basis of that analysis and review of other materials and statements, Dr. Shinnick formed his opinion that the work task was not safe and that a mechanical device should have been provided to perform the task.

We conclude that the trial court did not err in admitting the opinions of Dr. Shinnick complained of by NS. We agree that common knowledge alone may be sufficient to decide

4

whether a task is physically easy or difficult to perform, and a difficult task may more often result in physical injury. However, determining whether the task itself is safe is not solely a function of logic. Whether easy or difficult, a task's safety for the purpose of imposing liability on an employer is determined by its effect on the body and whether there is a need for alternative means of performing the task. Thus, Dr. Shinnick's opinions were admissible because those opinions, informed by his acknowledged expertise in the area, could assist the jury in determining the fact in issue — whether NS provided a safe workplace.

### III. Proof of Negligence

The principles applicable to a personal injury case filed pursuant to FELA are well-settled. Under FELA, an employer has a nondelegable, continuing duty to exercise reasonable care in providing a safe workplace for its employees. Id. at 44, 465 S.E.2d at 805. An employer fails to comply with that duty if its negligence played even the slightest part in causing injuries suffered by its employee. Both negligence and foreseeability must be established by more than a scintilla of evidence. Norfolk S. Ry. Co. v. Trimiew, 253 Va. 22, 27, 480 S.E.2d 104, 108 (1997). These issues are normally a matter for the jury. Johnson, 251 Va. at 44, 465 S.E.2d at 805.

NS asserts that as a matter of law Bowles failed to produce evidence sufficient to support a jury determination that NS was negligent or had reason to foresee any unreasonable risk to those employees performing the task. Furthermore, NS asserts that it provided a mechanical device, a pry bar, to help employees perform the job. NS, relying on Trimiew, asserts that the evidence showed only that compressing shock absorbers was a difficult or hard task, not an unsafe task, and, therefore, that the evidence failed to create a jury issue on the railroad's negligence. As a result, NS maintains that the trial court erred in denying NS's motion to strike Bowles' evidence.

The evidence in this case, unlike the evidence in Trimiew, includes expert testimony that the work was unsafe and that NS should have provided a mechanical device to perform the task. See 253 Va. at 28, 480 S.E.2d at 108. Additional evidence relating to NS's negligence is found in the testimony of Bowles and of fellow workers James Simmons and William Dowdy, who described the task as awkward, cumbersome, and difficult for an employee to perform alone. Bowles and Dowdy testified that the pry bar was not effective in all circumstances because it could slip and was awkward. Bowles further testified that when using the pry bar, he had incidents that "had not been good."

6

The record also contains evidence regarding notice and foreseeability.  Dowdy and Bowles testified that they had complained to their supervisor about the awkwardness of the task, and Simmons testified that he had complained at safety meetings that the task was difficult to perform.  Both Simmons and Dowdy heard Bowles make similar complaints at safety meetings several times.  Following the accident, during a discussion about Bowles' injury, a supervisor told Bowles that the "railroad had a poor practice of handling shock absorbers."

Considering the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party, as we must, Sloan v. Thornton, 249 Va. 492, 495, 457 S.E.2d 60, 61 (1995), we conclude that the record contained sufficient evidence regarding foreseeability and negligence by NS to allow the trial court to submit the issue to the jury for determination.

### III.  Jury Panel Lists

NS's final assignment of error involves the application of Code § 8.01-353.  NS maintains that the provision in Code § 8.01-353 that a court officer "shall make available . . . a copy of the jury panel to be used for the trial of the case at least forty-eight hours before the trial" is mandatory and the failure to comply with this provision is reversible error.

In this case, NS's counsel requested and received the jury panel list forty-eight hours before the scheduled trial. However, on the day of trial, a number of potential jurors called for jury duty could not get to the courthouse due to inclement weather. Because only approximately forty potential jurors arrived, all the potential jurors were put into a combined pool. This pool was used first for picking a jury for a criminal case scheduled for trial. The remaining twenty-eight potential jurors were then made available for Bowles' trial. The eight-member jury ultimately chosen from this pool for Bowles' case consisted of six persons who were not on the jury panel list previously furnished to NS's counsel. This was error, NS concludes, and the trial court should have granted either NS's motion for a continuance or NS's motion for a new trial.

Furnishing counsel with a jury panel list is part of a statutory procedure for the impaneling of jurors. That procedure involves three separate stages at which potential jurors are identified prior to choosing the final members of the jury. The first stage is the creation of a master jury list. The master jury list is assembled annually by jury commissioners and utilized for the following twelve month period. Code § 8.01-345. At the second stage, a list of potential jurors is drawn from the master list for service

8

during a term of court. Code § 8.01-348. Counsel in jury cases to be tried during that term have access to this term list. Code § 8.01-351. The final stage is the creation of the jury panel list, the list at issue in this case. The judge indicates the number of persons needed to hear the trial of a case and that number is selected from the term list. Code § 8.01-355. Those selected are notified to appear in court on a day directed by the court. Code § 8.01-353. Notification must be given by mailing summonses seven days before the potential jurors are to appear. Code § 8.01-298.

Alternative methods for identifying and securing potential jurors also are provided by statute. Code § 8.01-353 allows a judge to verbally direct a person already summoned for a jury panel to appear at a later date. Also, if "a sufficient number of jurors summoned cannot be obtained for the trial of any case, the judge may select from the names on the [master jury list] the names of as many persons as he deems necessary and cause them to be summoned to appear forthwith for the trial." Code § 8.01-355. Finally, both Code §§ 8.01-352 and -353 restrict the use of certain irregularities or errors in providing information or selecting potential jurors as the basis for objections, mistrials, or reversible errors on appeal.

The right to a jury trial is one of the cornerstones of our legal system, and complying with the procedures for insuring the presence of a fair and impartial jury is of the highest priority. As NS argues, an important part of that process is the ability of the parties to investigate potential jurors for information which may disqualify a juror for cause or otherwise impact the jury selection process. However, the statutory scheme does not contemplate that a full and accurate jury panel list will always be available for counsel forty-eight hours before the trial of the case. For example, the statutes specifically allow the trial judge to delay the appearance of previously-summoned members of a jury panel and to call persons on the term list to serve for a particular trial, even though those persons were not on the jury panel list. Code §§ 8.01-353, -355. These provisions recognize that unanticipated circumstances requiring alternative means of securing a jury panel will arise. In these circumstances, the members of the actual jury panel necessarily will vary from those persons listed on a jury panel list provided forty-eight hours before trial.

Thus, even assuming without deciding that the requirement in Code § 8.01-353 regarding provision of the jury panel list is mandatory, as NS argues, the mandatory nature of that provision cannot extend to requiring that the jury panel list

10

provided to counsel prior to trial be identical to the actual jury panel when circumstances require reconstitution of the jury panel.

The need to reconstitute the jury panel under the circumstances of this case was clear and has not been challenged by NS. No error was assigned to the manner in which the trial court reconstituted the jury panel nor was there any assignment of error that the resulting jury was not impartial. In arguing that the provisions of Code § 8.01-353 are mandatory, NS posits that the failure to comply with the statute "constitutes, in and of itself, injustice," but NS does not cite to any specific prejudice resulting from the trial court's action. NS's only complaint is that the jury panel list supplied before the trial did not accurately reflect the true makeup of the jury panel. Accordingly, we conclude that the trial court did not err in denying NS's motions for a continuance and for a new trial because some of the jury panel members were not identified in the jury panel list given to NS prior to trial.

In summary, for the reasons stated, we hold that the trial court did not err in admitting the opinions of Dr. Schinnick, in submitting the issue of NS's negligence to the jury, and in denying NS's motions for a continuance and a new trial based on a discrepancy between the jury panel list and

11

members of the jury panel.  Accordingly, the judgment of the

trial court will be affirmed.

                                                    <u>Affirmed.</u>