**Bernard E. WALDEN, Plaintiff–Appellant,**

v.

**ILLINOIS CENTRAL GULF RAILROAD, a corporation, Defendant–Appellee.**

No. 91–2364.

United States Court of Appeals, Seventh Circuit.

Argued April 28, 1992.

Decided Sept. 16, 1992.

Anthony G. Argeros (argued), Roger C. Elliott, Elliott & McClure, Momence, Ill., Robert Barewin, Metnick, Barewin & Wise, Springfield, Ill., for plaintiff-appellant.

Matthew J. Maddox (argued), William Hardy, Robert E. Gillespie, Hinshaw & Culbertson, Springfield, Ill., for defendant-appellee.

Before MANION, Circuit Judge, and FAIRCHILD and WOOD, Jr., Senior Circuit Judges.

FAIRCHILD, Senior Circuit Judge.

Bernard Walden sustained injuries while acting in the scope of his employment as a brakeman for Illinois Central Gulf Railroad. Walden filed an action for personal injuries under the Federal Employers' Liability Act (FELA), 45 U.S.C. §§ 51–60. Prior to trial Walden moved for summary judgment on the issues of the railroad's negligence *per se*, liability and Walden's

contributory negligence. The district court found that the railroad had violated Section 220.49 of the Federal Railroad Administration Radio Standards and Procedures, 49 C.F.R. § 220.49, and held that the violation constituted negligence *per se*. The case went to trial on the remaining issues, and a jury rendered a verdict for the railroad. Walden moved for judgment notwithstanding the verdict (JNOV) and for a new trial. The district court denied both motions, and Walden now appeals.

## I. BACKGROUND

On June 23, 1986, Walden was working as a brakeman for the defendant railroad. He was working together with engineer Marion Wagner, flagman James Tice, fireman James Andrews, and conductor Billy Tice to couple certain engines with several boxcars. Walden initiated the coupling process by throwing a track switch located between the rear of the engines and the boxcars. He then instructed the engineer by radio to begin backing the engines toward the boxcars. As the engines began backing toward the boxcars, Walden walked toward the rear of the moving engine and boarded, a procedure he testified was normally followed by brakemen. Tice then took over the radio communications with the engineer. Tice attempted to signal by radio that the engines had traveled one-half of the distance to the boxcars. The radio communication was garbled and the engineer so informed him. Tice, therefore, stepped out to where he could be seen by the engineer and gave hand signals to effect the coupling.

Meanwhile, Walden proceeded up a series of steps and walked toward the door to the cabin where his assigned seat was located. He testified, however, that he was not required to be in his assigned seat until after the coupling was completed and the train's journey began. (Tr. at 40–41.) Walden testified that he intended to be seated or braced by the time of coupling and that he knew that it was preferable to be braced during a coupling. (Tr. 43–44.) He further testified that the area between the cabin door and his assigned seat was a

"bad spot" to be in during a coupling because there was nothing to hold on to. (Tr. at 44.) He, however, was not aware that a coupling was imminent because he did not feel or hear the engine's brakes being applied. (Tr. at 47.) At the moment Walden opened the cabin door and started to step inside, the engines coupled with the boxcars, and he was thrown over his assigned seat and injured.

The engineer estimated that at the time of impact the engines were traveling at less than one mile per hour, and he testified that the coupling was a normal coupling. (Tr. at 85, 93.) Tice estimated from his vantage point on the tracks that the engines were traveling at two to three miles per hour at impact, and that the coupling appeared to be normal. (Tr. at 67, 69.) Andrews testified that the impact was noticeable but not severe. (R. at 91.) Walden estimated that the engines were traveling at four miles per hour at impact. (Tr. at 48.)

As stated above, based upon the undisputed fact that the engines did not stop after radio communications were interrupted, the district court held, on pre-trial motion for summary judgment, that Section 220.49 of the Federal Railroad Administration Radio Standards and Procedures had been violated constituting negligence *per se* as a matter of law. Section 220.49 provides,

> If the instructions are not understood or continuous radio contact is not maintained, the movement shall be stopped immediately and may not be resumed until the misunderstanding has been resolved, radio contact has been restored, or communication has been achieved by hand signals or other procedures in accordance with the operating rules of the railroad.

49 C.F.R. § 220.49 (1977). The issue of causation was submitted to the jury, and it was asked to answer the following special verdict question:

> Did the defendant's violation of Section 220.49 of the Federal Railroad Administration Radio Standards and Procedures [49 C.F.R. § 220.49] cause or contribute

to some injury or damage sustained by the plaintiff?

The jury answered "no" and returned a verdict in favor of the defendant railroad.

## II. DISCUSSION

### A. Motion for JNOV

We review denial of a motion for JNOV de novo. *Siddiqi v. Leak*, 880 F.2d 904, 908 (7th Cir.1989). "We must determine whether there is sufficient evidence, when combined with all inferences reasonably drawn, to support the jury's verdict when the evidence is viewed in the light most favorable to the nonmoving party. This court will not reweigh or reevaluate the evidence—that task is reserved to the jury as factfinder." *Id.* (citations omitted).

In an FELA action, the violation of a statute or regulation, such as Section 220.49, automatically constitutes breach of the employer's duty and negligence *per se* and will result in liability if the violation contributed in fact to the plaintiff's injury. *See, Kernan v. Am. Dredging Co.*, 355 U.S. 426, 432–33, 78 S.Ct. 394, 398, 2 L.Ed.2d 382 (1958). The FELA is not a workmen's compensation act; causation must still be proved. *See, Simpson v. Texas & New Orleans R.R. Co.*, 297 F.2d 660, 662 (5th Cir.1962). The railroad is liable for any injury to an employee "resulting in whole or in part" from the railroad's negligence. 45 U.S.C. § 51 (1986). Proof that the employee's own negligence was the *sole* cause of his or her injury is a valid defense because it eliminates the possibility that the regulatory violation contributed in whole or part to the injury. *See, Beimert v. Burlington Northern, Inc.*, 726 F.2d 412, 414 (8th Cir.), *cert. denied*, 467 U.S. 1216, 104 S.Ct. 2659, 81 L.Ed.2d 365 (1984).

Walden argues that the district court should have found causation established as a matter of law and, thus, granted his motion for JNOV. "The Supreme Court standard is that a district court is justified in withdrawing such issues from the jury's consideration 'only in those extremely rare instances when there is a zero probability either of employer negligence

or that any such negligence contributed to the injury of an employee.' " *Eckert v. Aliquippa & Southern R.R. Co.*, 828 F.2d 183, 187 (3d Cir.1987) (quoting *Pehowic v. Erie Lackawanna R.R. Co.*, 430 F.2d 697, 699 (3d Cir.1970)). "The decisions of [the Supreme] Court after the 1939 amendments teach that the Congress vested the power of decision in these actions exclusively in the jury in all but the infrequent cases where fair-minded jurors cannot honestly differ whether fault of the employer played any part in the employee's injury." *Rogers v. Missouri Pacific R.R. Co.*, 352 U.S. 500, 510, 77 S.Ct. 443, 451, 1 L.Ed.2d 493 (1957). *See also, Coray v. Southern Pacific Co.*, 335 U.S. 520, 69 S.Ct. 275, 93 L.Ed. 208 (1949).

In *Coray*, a train was traveling in an easterly direction followed within several hundred feet by a motorcar. The train's brakes unexpectedly locked up due to the railroad's violation of a statutory obligation, and the train suddenly stopped. The motorcar was equipped with brakes that could have stopped it within a distance of about one hundred feet. However, the motorcar operator was not aware that the train had stopped because he was looking backward at a block signal. He did not apply the brakes and was killed in the collision with the train. The Utah Supreme Court held as a matter of law that the defective equipment did not contribute to the employee's death. The Supreme Court reversed, stating "[t]he jury could have found that decedent's death resulted from any or all of the foregoing circumstances" which the Court noted were "inseparably related in time or space." *Coray*, 335 U.S. at 524, 69 S.Ct. at 277. In other words, the Court left the determination of causation to the jury.

Similarly, in this case there was sufficient evidence from which a reasonable jury could have found that the regulatory violation did not contribute in whole or part to Walden's injury. When the facts reasonably support a conclusion for either party, the decision is exclusively for the jury to make. *Rogers*, 352 U.S. at 504, 77 S.Ct. at 447. The jury could have found the following: Walden boarded the engines during the coupling process although he

was not required to do so; he knew that he should be braced during a coupling; Walden continued through the cabin door where he knew there was nothing to hold on to even though he was not required to be in his assigned seat until the train began its journey; and a normal coupling was effected. From these circumstances a reasonable jury could have found that Walden's own actions were the sole cause of his injuries and that the failure to stop the train when radio communications were interrupted did not contribute to his injury. The railroad's negligence consisted of its failure to make an immediate stop. The jury could have believed that because of Walden's unbraced position, not only that his injury upon coupling was caused by his unbraced position, but that the same injury would have occurred if the engine had been unexpectedly stopped, as the regulations required. The district court appropriately declined to withdraw the causation issue from the jury.

Walden cites *Southern Ry. Co. v. Youngblood,* 286 U.S. 313, 52 S.Ct. 518, 76 L.Ed. 1124 (1932) and *Unadilla Valley Ry. Co. v. Caldine,* 278 U.S. 139, 49 S.Ct. 91, 73 L.Ed. 224 (1928), in support of his argument that the district court should have decided causation as a matter of law. Initially, we note that both of these cases were decided prior to the 1939 amendments to the FELA in which Congress expressed its intention to leave causation determinations to the jury. *See, Rogers,* 352 U.S. at 509, 77 S.Ct. at 450. Moreover, in both *Caldine* and *Youngblood* the injured employee disobeyed direct orders and then attempted to argue that the railroad could have prevented such disobedience by following certain regulations and, thus, the railroad's violation of those regulations contributed to his injury. The Court rejected this argument and held that the employee had not proved that his injuries were caused in whole or part by the railroad's negligence and that the injury was instead caused entirely by the plaintiff's own actions.

At most, these two cases stand for the proposition that it is *possible* for causation to be decided as a matter of law. However, both cases involved similar and equally extraordinary facts not present here. In this case, there was no analogous argument that the railroad was negligent in failing to prevent Walden's failure to care for his own safety. Moreover, had such an argument been made it would not be favorable to Walden, but would strengthen the argument that his own negligence was the sole cause of his injuries. *Caldine* and *Youngblood* are inapposite.

#### B. Motion for New Trial

"The test to be applied in determining whether a motion for a new trial should be granted is whether 'the verdict is against the weight of the evidence, that the damages are excessive, or that, for other reasons, the trial was not fair to the party moving.'" *Gen. Foam Fabricators, Inc. v. Tenneco Chem., Inc.,* 695 F.2d 281, 288 (7th Cir.1982) (quoting *Montgomery Ward & Co. v. Duncan,* 311 U.S. 243, 251, 61 S.Ct. 189, 194, 85 L.Ed. 147 (1940). "The grant or denial of a motion for a new trial 'is not subject to review by this court, except upon exceptional circumstances showing a clear abuse of discretion.'" *Id.* (quoting *Stinebower v. Scala,* 331 F.2d 366, 367 (7th Cir.1964).

Walden argues that several trial errors warrant a new trial. First, he argues that it was an abuse of discretion for the district court to prohibit him from arguing in closing arguments that radio signals are more precise than hand signals in effecting a coupling. He contends that this argument was relevant as responsive to the railroad's argument that hand signals and radio communication are equally effective and safe methods for effecting a coupling.[1] We agree. However, closing arguments are limited to the facts in evidence and reasonable inferences therefrom. *United States v. Doyle,* 771 F.2d 250, 258 (7th Cir.1985). Walden presented no direct evidence to support the argument that radio

---

**1.** Evidence on the relative safety of hand signals and radio communications was relevant to show that the coupling was normal and that the

violation by failure to stop did not contribute to Walden's injury.

signals are more precise than hand signals, but argues that it could reasonably be inferred from James Andrews' deposition which was read to the jury. We have examined the deposition. We do not think that the district court clearly abused its discretion in determining that the proposed argument was not supported by a reasonable inference from the facts in evidence.

■ Second, Walden argues that the district court erred in precluding him from arguing that the use of hand signals was a continuing violation of the regulations. The use of hand signals, however, is not a violation of the regulations. In fact, Section 220.49 states that movement may be resumed once communication has been achieved by hand signals. The failure to stop immediately when radio contact was lost was the violation of the regulation, and Walden was permitted to and did so argue to the jury. In addition, the violation of the regulations had been previously determined on summary judgment and was not before the jury. The jury was to determine only whether the railroad's violation in failing to stop contributed to Walden's injury. Thus, the district court's decision to preclude such an argument did not result in a trial that was unfair and was not a clear abuse of discretion.

■ Last, Walden argues that the railroad improperly referred in its closing argument to Walden's assumption of the risk, a defense that is not recognized in FELA actions, *see* 45 U.S.C. § 54 (1986). Walden did not object to the argument until after the jury had been discharged for deliberations. The district court ruled that the objection was waived as untimely. Walden argues that the timing of his objection was irrelevant because the railroad's argument constituted plain error. "A ground for reversal may be raised for the first time on appeal 'when the issue presented goes to the district court's subject-matter jurisdiction, if the district court's decision is 'plain error' ... or if there are exceptional circumstances where justice demands more flexibility.'" *Walsh v. Mellas*, 837 F.2d 789, 800 (7th Cir.), *cert. denied*, 486 U.S. 1061, 108 S.Ct. 2832, 100 L.Ed.2d 933

(1988). We have examined the transcript and are not even convinced that the railroad argued an assumption of the risk theory. Moreover, Walden's objection neither went to the district court's subject matter jurisdiction nor does it present such exceptional circumstances in which justice would demand our attention.

Although Walden was entitled to postpone his objection until the end of the closing arguments in order to avoid highlighting the objectionable argument to the jury. *See, Joseph v. Brierton*, 739 F.2d 1244, 1247 (7th Cir.1984), he was not entitled to further postpone his objection until after the jury was discharged for deliberations. We agree with the Eighth Circuit that objections to closing argument must be made prior to the submission of the case to the jury in order to enable the judge to make a curative instruction if necessary. *Lange v. Schultz*, 627 F.2d 122, 127 (8th Cir.1980). Walden's objections to the content of the railroad's closing argument were, therefore, waived.

### III. CONCLUSION

The judgment of the district court is AFFIRMED.