533 S.E.2d 608

**Lester W. NORTON, Respondent,**

**v.**

**NORFOLK SOUTHERN RAILWAY COMPANY, Appellant.**

**No. 3183.**

Court of Appeals of South Carolina.

Heard April 10, 2000.

Decided June 5, 2000.

Rehearing Denied Sept. 2, 2000.

Daniel B. White and Keith D. Munson, both of Gibbes, Gallivan, White & Boyd, of Greenville, for appellant.

Walton G. Bondurant, Jr., Randall E. Appleton and David S. Schnitzer, all of Miller & Bondurant, of Portsmouth, VA; and John David Whisenhunt, of Whisenhunt & Whisenhunt, of Florence, for respondent.

HEARN, Chief Judge:

In this negligence action initiated under the Federal Employers' Liability Act (FELA)[1] Norfolk Southern Railway Company (Norfolk) appeals the trial judge's grant of a new trial following a jury verdict in its favor. We affirm.

## FACTS

While working as a carman[2] for Norfolk, Lester Norton fell when his foot became caught in a welding box, injuring his left knee. Coworker James Wilson, who witnessed Norton's fall in the tool shed, testified the box was empty and should have been placed in the trash instead of wedged under a shelf ledge. Wilson further stated the box was not visible until Norton's foot became caught in it, although the shed has sufficient lighting. In the days after the fall, Norton did not complain of pain and continued to work.

Approximately two weeks after the fall, Norton was going down the stairs at his home when he suddenly experienced severe pain in the same knee. Norton consulted a doctor who aspirated the knee and injected it with cortisone. This procedure was repeated a short time later but Norton's knee remained swollen. Norton subsequently had arthroscopic surgery on his knee. Dr. James McCarthy testified Norton had a torn meniscus and early chondromalacia resulting from his fall on the job. According to McCarthy, Norton is no longer able to perform his duties as a carman due to his knee problems. McCarthy further stated Norton's condition is not only permanent but will get progressively worse.

Trial testimony indicated the Norfolk company handbook provides employees must keep the premises under their control neat and clean. Additionally, the railroad had placed various signs around the coach shop which state "Downtime is clean-up time." Although the shed is left unlocked during the day, only carmen have access to it. Tom Reid, a Norfolk supervisor, testified if he had seen the box under the shelf, he would not have required anyone to pick it up because empty boxes were frequently used for transporting tools from the

---

1. 45 U.S.C.A. § 51 et seq. (West 1986 & Supp.1999).

2. A carman works on boxcars.

shed to the jobsite. He stated empty boxes were stored in the shed for that purpose. Norton himself corroborated the use of empty boxes for carrying nuts and bolts.

The jury found Norfolk was not negligent. Norton moved for a new trial "according to the doctrine of the thirteenth juror" acknowledging there was evidence indicating boxes were typically stored in the shed but arguing the jury "ignored the evidence presented on behalf of the plaintiff and the court's instruction on the issue of negligence." Norton further contended the "verdict returned is contrary to the preponderance of the evidence presented at trial and is not supported by the factual testimony elicited by the parties at trial." The trial judge agreed and granted Norton's motion for a new trial. Norfolk appeals.

## DISCUSSION

 Norfolk argues the trial judge incorrectly applied the South Carolina "thirteenth juror" standard in granting the motion for a new trial as opposed to the federal rules governing the grant of a new trial, and, regardless which standard is applied, the trial judge erred in granting the motion.

 A FELA action brought in state court is controlled by federal substantive law and state procedural law. *See Jennings v. Illinois Cent. R.R. Co.*, 993 S.W.2d 66, 70 (Tenn. Ct.App.1999); *Pryor v. National R.R. Passenger Corp.*, 301 Ill.App.3d 628, 234 Ill.Dec. 897, 703 N.E.2d 997, 1000 (1998); *Hassell v. Missouri Pac. R.R. Co.*, 880 S.W.2d 39, 44 (Tex. App.1994). However, a form of local practice may not defeat a federal right. *Brown v. Western Ry. of Ala.*, 338 U.S. 294, 296, 70 S.Ct. 105, 106, 94 L.Ed. 100 (1949). This is especially true when a state procedural rule infringes upon the 7th Amendment right to a jury trial. *See Dice v. Akron, Canton & Youngstown R.R. Co.*, 342 U.S. 359, 363, 72 S.Ct. 312, 315, 96 L.Ed. 398 (1952).[3]

---

3. It has been noted that *Brown, Dice,* and their progeny were at least originally aimed specifically at protecting FELA *plaintiffs'* rights. *See Norfolk & W. Ry. Co. v. Liepelt*, 444 U.S. 490, 503–04, 100 S.Ct. 755, 762, 62 L.Ed.2d 689 (1980) (Blackmun, J., dissenting).

■ A motion for a new trial is a procedural rule. Rule 59(a), SCRCP, provides in pertinent part:

**Grounds.** A new trial may be granted to all or any of the parties and on all or part of the issues (1) in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the State; . . . .

Our supreme court has endorsed the continuing viability of the "thirteenth juror" doctrine in this state on several occasions. *Folkens v. Hunt,* 300 S.C. 251, 254, 387 S.E.2d 265, 267 (1990). In *Folkens,* the court explained the thirteenth juror doctrine is a "vehicle by which the trial court may grant a new trial absolute when [the court] finds that the evidence does not justify the verdict. This ruling has also been termed granting a new trial upon the facts." *Id.* (citing *S.C. State Highway Dept. v. Townsend,* 265 S.C. 253, 217 S.E.2d 778 (1975)).

■ However, because the motion in this case forced the trial judge to weigh the evidence, the question is one governed by federal law.[4] "It is firmly established that questions of sufficiency of evidence for the jury in cases arising under [FELA] in state courts are to be determined by federal rules." C.C. Marvel, Annotation, *Applicability of State Practice and Procedure in Federal Employers' Liability Act Actions Brought in State Courts,* 79 A.L.R.2d 553 (1961). Thus, there is no question that South Carolina's "thirteenth juror" doctrine would not be applicable.

Without question, Norton requested a new trial pursuant to the "thirteenth juror" doctrine. However, the trial judge's order granting a new trial does not mention that doctrine. Specifically, the order states:

The Court finds as a matter of fact that the verdict returned herein is contrary to the fair preponderance of the evidence presented at trial and is not supported by the factual testimony at trial. The verdict indicates the jury failed to properly consider and follow the instructions of the court in its deliberations.

---

4. At oral argument the parties stipulated the issues presented are governed by federal law.

Although the order does not indicate whether the trial judge invoked the thirteenth juror doctrine or the applicable federal standard for a new trial, we note that Norfolk argued the applicability of the federal standard in its memorandum in opposition to Norton's motion for a new trial and Norton admitted the issue was controlled by federal law in his memorandum. Thus, since the trial judge did not mention the thirteenth juror doctrine in his order, we may fairly assume that he relied on the applicable federal standard in granting a new trial.

Moreover, even if the trial judge did rely on the thirteenth juror doctrine in granting a new trial, reversal is not warranted. Because we are permitted to affirm on any ground appearing in the record and because we fail to discern any significant difference between the analysis employed by a trial judge under the thirteenth juror doctrine and under the applicable federal doctrine, as discussed *infra*, we decline to reverse the trial judge on the ground that he employed the wrong standard in granting Norton a new trial.

 Under federal law, the test to be applied in determining whether to grant a new trial is whether the verdict is against the weight of the evidence, that the damages are excessive, or that the trial was for other reasons unfair to the moving party. *Walden v. Illinois Cent. Gulf R.R.*, 975 F.2d 361, 365 (7th Cir.1992) (quotations and citations omitted). "A trial judge can grant a motion for a new trial if he believes the verdict is contrary to the weight of the evidence." *Robin v. Wilson Bros. Drilling*, 719 F.2d 96, 98 (5th Cir.1983). In fact, the trial judge has discretion to order a new trial when he or she believes the verdict to be against the clear weight of the evidence, even if the verdict is supported by substantial evidence. *Gill v. Rollins Protective Servs. Co.*, 836 F.2d 194, 197–98 (4th Cir.1987).

 Thus, we do not find the federal standard substantively different from our state "thirteenth juror" standard as far as the trial judge's discretion whether to grant a new trial is concerned. Moreover, both the federal appellate courts and our appellate courts apply highly deferential standards of review on appeals from such decisions. It is here, however, on

appellate review, that the federal law and our state law diverge somewhat.

In South Carolina, the appellate court reviews the grant or denial of a new trial motion for an abuse of discretion and will not reverse the trial court's decision unless it is controlled by an error of law or is not supported by the evidence. *Duncan v. Hampton County Sch. Dist. No. 2*, 335 S.C. 535, 547, 517 S.E.2d 449, 455 (Ct.App.1999). Our supreme court has also noted that when reviewing the grant or denial of a new trial, the appellate court will not weigh the conflicting evidence, but if there were no conflicts in the evidence, then the court could reverse an order granting a new trial as an error of law amounting to an abuse of discretion. *South Carolina State Highway Dep't v. Clarkson*, 267 S.C. 121, 127, 226 S.E.2d 696, 697–98 (1976). Thus, when there is a conflict in the evidence, the trial judge's decision is sacrosanct.

Facially, federal law appears to employ a similar standard. In federal court, the trial judge "is free to weigh the evidence in considering th[e] motion," and "appellate review of the trial court's action is limited to consideration of whether the lower court abused its broad discretion." *Gill*, 836 F.2d at 197–98; *see also Walden*, 975 F.2d at 365 (noting that grant or denial of a new trial motion is not subject to review by appellate court except upon exceptional circumstances showing a clear abuse of discretion). The Fourth Circuit Court of Appeals described appellate review of the trial judge's decision as follows:

> The decision to grant or deny a new trial rests with the sound discretion of the district court, and we review this decision for a clear abuse of discretion. Absent a clear abuse of discretion, we shall not disturb this decision; indeed, we have opined that this decision " 'is not reviewable upon appeal, save in the most exceptional circumstances, …' ". We commit this discretion to the district court "because the district judge is in a position to see and hear the witnesses and is able to view the case from a perspective that an appellate court can never match." Given the district court's intimate familiarity with the trial, the district court

"may weigh the evidence and assess credibility in ruling on a motion for a new trial."

*Bristol Steel & Iron Works, Inc. v. Bethlehem Steel Corp.*, 41 F.3d 182, 186 (4th Cir.1994) (internal citations omitted).

Despite the broad language used by the foregoing federal authority, most federal courts do not apply this same discretionary review evenly to grants *and* denials of new trial motions. It appears to be generally accepted that federal appeals courts grant less deference to the trial judge when a new trial has been ordered than when one has been denied. *See Brady v. Fort Bend County*, 145 F.3d 691, 713 (5th Cir.1998), *cert. denied*, 525 U.S. 1105, 119 S.Ct. 873, 142 L.Ed.2d 774 (1999); *Wilburn v. Maritrans GP Inc.*, 139 F.3d 350, 363 (3d Cir.1998); *Hutchinson v. Stuckey*, 952 F.2d 1418, 1420–21 (D.C.Cir.1992). The rationale behind this double standard is that when the trial judge grants the motion for a new trial "the jury verdict is set aside" and the "usual deference to the trial judge conflicts with the deference to the jury on questions of fact." *Rixey v. West Paces Ferry Hosp., Inc.*, 916 F.2d 608, 612 (11th Cir.1990) (citation omitted). In such a case, the trial judge should have found the verdict to be "against the great—not merely the greater—weight of the evidence." *Id.* at 611. Therefore, the difference federal law makes in the instant case is not in the discretion used by the trial judge, but in the view this court must take of the trial judge's use of that discretion.

Even under the federal standard, it is clear that the trial judge in the instant case could have granted Norton a new trial, as he did, upon finding the jury's verdict was contrary to the great weight of the evidence. We find the language employed by the trial judge in his order broad enough to withstand the applicable federal standard of review.[5]

Various courts addressing the issue of negligence under FELA have held a "relaxed standard of proof" applies under

---

5. While we note the trial judge found the verdict to be against the "fair preponderance" of the evidence, he also found the verdict was "not supported by the factual testimony at trial," and that it "indicates the jury failed to properly consider and follow the instructions of the court. . . ." This language taken as a whole indicates to this court that the trial judge found the verdict to be against something more than just the "fair preponderance" of the evidence.

the Act requiring only that plaintiffs demonstrate a railroad's negligence played a part, even the slightest part in producing injury or death. *Hall v. Norfolk S. Ry. Co.*, 829 F.Supp. 1571, 1577–78 (N.D.Ga.1993); *Nelsen v. Research Corp. of Univ. of Haw.*, 805 F.Supp. 837, 848 (D.Haw.1992); *Knowles v. Burlington N. R.R. Co.*, 18 Kan.App.2d 608, 856 P.2d 1352, 1355 (1993); *Mitchell v. Missouri–Kansas–Texas R.R. Co.*, 786 S.W.2d 659, 660–61 (Tex.1990).

In *Ulfik v. Metro–North Commuter R.R.*, 77 F.3d 54 (2d Cir.1996), the Second Circuit Court of Appeals noted:

> The Supreme Court has not expressly held that a relaxed standard for negligence, as distinguished from causation, applies under FELA. Yet numerous appellate courts, including ours, have construed the statute, in light of its broad remedial nature, as creating a relaxed standard for negligence as well as causation.
>
> Though the issue of negligence is still governed by the common law requirement of foreseeability in order to determine whether or not a defendant is required to guard against a particular risk, the concept of foreseeability has been construed somewhat more liberally in FELA cases than it might otherwise be under common law.

*Ulfik,* at 58 n. 1 (citations omitted). It has indeed been noted that FELA's history has been one of "persistent liberalization" of the standard of liability under the act. W. Page Keeton et al., *Prosser & Keeton on Torts* § 80, at 578 (5th ed. 1984). Additionally:

> This [history] has been said to reduce the extent of the negligence required, as well as the quantum of proof necessary to establish it, to the "vanishing point." While it is still undoubtedly true that there must be some shreds of proof both of negligence and of causation, and that "speculation, conjecture and possibilities" will not be enough, there appears to be little doubt that under [FELA] jury verdicts for the plaintiff can be sustained upon evidence which would not be sufficient in the ordinary negligence action.

*Id.* at 579 (internal citations omitted).

 In the instant case, the jury returned its verdict on a special verdict form. The first question was simply whether

or not Norfolk was negligent, to which the jury responded in the negative. In view of the relaxed standard discussed above, we find the lower court's determination there was evidence of negligence on the part of Norfolk and that the jury verdict was contrary to the weight of evidence is supported by the record. Although there was testimony that boxes like the one Norton stepped in were often used by carmen for carrying parts, additional testimony indicated that this particular box should not have been where it was, and that empty boxes not properly stored on or under a shelf were generally thrown away. In fact, after Norton's fall someone threw the box that caused his fall in the trash. Moreover, storing boxes under shelves on the floor, as was apparently done at times in the shop, could certainly foreseeably lead to the type of accident which occurred here. The unrebutted testimony at trial was that the box at issue was not properly stored on or under the shelves. Because of the special verdict form, the jury's determination in this case ceased upon a finding of no negligence. Although the next question on the form dealt with proximate cause, the trial judge did not have the clerk read the answer, if there was one, into the record. Apparently agreeing the inquiry ended upon the jury's negligence determination, neither party objected or asked that the rest of the form be entered into the record. Thus, Norton's new trial motion dealt solely with the question of negligence. The trial judge could have found the evidence clearly established negligence on the part of Norfolk. Therefore, the trial judge's grant of a new trial did not amount to an abuse of discretion.

Accordingly, the judgment of the lower court is hereby

**AFFIRMED.**

STILWELL, J., and MOREHEAD, Acting Judge, concurring.