538 S.E.2d 664

John David ROGERS, Respondent,

v.

NORFOLK SOUTHERN CORPORATION, Norfolk
Southern Railway Company, Appellant.

No. 3248.

Court of Appeals of South Carolina.

Heard June 7, 2000.
Decided Oct. 2, 2000.
Rehearing Denied Jan. 8, 2001.

Henry Dargan McMaster and John Gregg McMaster, both of Tompkins & McMaster, all of Columbia, for appellant.

Robert A. McKenzie, of McDonald, McKenzie, Rubin, Miller & Lybrand, of Columbia; William C. Tucker, of Lucas, Alvis & Walsh; and Deborah Alley Smith, of Rives & Peterson, both of Birmingham, AL, for respondent.

CURETON, Judge:

This appeal arises from claims filed by John David Rogers (Rogers) against his employer Norfolk Southern (Norfolk) under the Federal Employer's Liability Act (the FELA) [1] and against the U.S. Silica Company (U.S. Silica) for common law negligence. Following the trial of this case, the jury returned a verdict of $3,000,000, apportioning thirty percent to Norfolk and seventy percent to U.S. Silica. On appeal, Norfolk argues: 1) Rogers should not recover under the FELA because Norfolk was not negligent; 2) Rogers's negligence was the sole cause of his injuries; 3) the verdict was excessive; 4) the court erred in omitting a jury charge regarding the taxability of the award; and 5) the court erred in holding post-trial that the jury's apportionment of damages was not binding on the parties. We reverse.

## FACTS

Rogers, an assistant track supervisor for Norfolk, was injured while inspecting a hole that appeared around two sets of railroad sidetracks on U.S. Silica's premises. Generally, Rogers's duties were to inspect Norfolk's tracks in his assigned work area, appraise any problems or damage found, and advise his supervisors of necessary repairs.

On the day Rogers was injured, his supervisor sent him to inspect a large hole under the tracks on U.S. Silica's premises to see whether the tracks were safe to traverse. A Norfolk train engineer and conductor discovered the hole upon their return from a lunch break. The hole was approximately four to five feet deep, over eight feet across, with steep sides, and somewhat curved in on one side so as to cause the ground

---

1. The FELA subjects every common carrier by railroad engaging in interstate commerce to liability to employees injured as a result of the carrier's negligence. *See* 45 U.S.C. § 51, *et seq.* State courts have concurrent jurisdiction with federal courts in FELA suits. 45 U.S.C. § 56.

above to be undermined. The train engineer and conductor also reported the hole to at least two U.S. Silica employees who made no comment or explanation concerning the cause of the hole or any prior problems in the area.

Two days earlier, the underground slurry pipe that ran below the railroad tracks blew out.[2] When the blowout occurred, U.S. Silica employees bolted a temporary band over the pipe and filled in the hole caused by the blowout.

When Rogers arrived to inspect the hole, he could see the hole from about 150 feet away. He testified that he had no idea what could have caused the hole when he first observed it. Rogers could not see that some of the ground near the hole was undermined because of the manner in which it was undermined and the direction from which he approached the hole. Rogers told his assistant to "stand back" as he went to inspect the hole. Walking on the steel rails and track structure, Rogers stood within two to three feet from the hole. As Rogers attempted to look into the hole, the ground began to give way under his right foot. When he felt the ground giving way, Rogers jerked back from the hole to catch himself, twisted, and immediately felt pain in his back. Rogers reported the accident to his supervisor and went home.

Upon seeking medical treatment for back and left leg pain stemming from the incident, Rogers was diagnosed with a herniated disc. Surgery was performed to remove the ruptured disc, but the surgery did not relieve Rogers's leg pain. Rogers attempted to return to work after the surgery, but Norfolk would not permit him to do so. At the time of trial, Rogers had held five different jobs, none of which offered benefits and salary comparable to what he received at Norfolk.

---

2. Slurry is sand that has been mixed with water so that it can be pumped through a pipe. It has a "sandblasting" effect, however, on the pipes through which it is pumped. This sandblasting effect causes the plastic pipes to wear out. Once a pipe springs a leak, it is a certainty that other leaks will appear soon and the entire pipe must be replaced. Normally, slurry is pumped through the pipe, but sometimes U.S. Silica's employees wash out the slurry line by pumping pure water through it. If the pipe is not encased within another protective pipe and has a blowout while water is being pumped through it, a hole will form in the sandy ground above the pipe and the ground will eventually cave in. Apparently, this is what caused the hole Rogers was sent to inspect.

Rogers's prognosis was described by Dr. John Eugene Alexander, an orthopedist, as poor. Although Rogers had sustained back injuries before this incident [3], he had been able to return to work with restrictions. Rogers was working well within those restrictions without difficulty until this incident occurred. Because of this injury, Rogers has work restrictions on lifting, bending, and stooping, as well as an additional twenty percent impairment to his lumbar spine.[4] Dr. Alexander opined that Rogers will never be able to do the type of work he did in the past or to resume his previous recreational activities, and that his condition will progressively worsen with time. At the time of trial, Rogers suffered from depression and had problems sleeping because of constant pain.

As a result of his accident and injuries, Rogers filed suit against Norfolk under the FELA, alleging Norfolk was negligent in failing to provide him with a reasonably safe place to work. Rogers also brought suit against U.S. Silica for common law negligence, alleging U.S. Silica had negligently failed to maintain its facility, grounds, and property in a reasonably safe and suitable condition for business invitees. Rogers also alleged U.S. Silica negligently failed to warn him of the dangerous and hazardous condition of its facility, grounds and property. U.S. Silica and Norfolk answered with general denials and asserted the affirmative defense of Rogers's contributory negligence. Norfolk also asserted release, stemming from Rogers's execution of a release in 1990 and one in 1995, and failure to mitigate damages as defenses. Norfolk also alleged an indemnity cross-claim against U.S. Silica.

The case was heard by a judge and jury in a five-day trial. At the close of the evidence, both U.S. Silica and Norfolk moved for directed verdicts. The trial court denied the motions. The jury returned a verdict for Rogers in the amount of $3,000,000 actual damages. The jury apportioned thirty percent of the verdict to Norfolk ($900,000) and seventy percent to U.S. Silica ($2,100,000). The jury found no negligence on Rogers's part. Following the return of this verdict,

---

3. Rogers made FELA claims on both of these injuries, and both claims were resolved.

4. Rogers already had a thirty percent impairment to the back as a result of the two prior back injuries.

U.S. Silica and Norfolk moved for judgment notwithstanding the verdict and, alternatively, for a new trial or new trial *nisi remittitur*. The trial court denied these motions. Both defendants then moved for reconsideration on various grounds. Those motions were also denied. This appeal followed.[5]

## LAW/ANALYSIS

■ In an action at law on appeal of a case tried by a jury, the jurisdiction of this Court extends merely to the correction of errors of law, and a factual finding of the jury will not be disturbed unless a review of the record discloses there is no evidence which reasonably supports the jury's findings. *Townes Assocs. v. City of Greenville*, 266 S.C. 81, 221 S.E.2d 773 (1976).

■ Norfolk argues the trial court erred in denying its motion for judgment notwithstanding the verdict (JNOV) because no issues of fact existed as to whether Norfolk was negligent. We agree.

In ruling on motions for directed verdict or judgment notwithstanding the verdict, the trial court is required to view the evidence and the inferences that reasonably can be drawn therefrom in the light most favorable to the party opposing the motions. The trial court must deny the motions when the evidence yields more than one inference or its inference is in doubt. This Court will reverse the trial court only when there is no evidence to support the ruling below.

*Steinke v. South Carolina Dep't of Labor, Licensing and Regulation*, 336 S.C. 373, 386, 520 S.E.2d 142, 148 (1999).

■ Under the FELA, a railroad "shall be liable in damages to any person suffering injury while he is employed by such carrier ... for such injury ... resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier." 45 U.S.C. § 51. The FELA requires that liability arise from negligence which causes the employee's injury. *Brady v. Southern Ry. Co.*, 320 U.S. 476,

---

5. U.S. Silica also brought an appeal of the verdict before this Court. However, during the pendency of the appeal, Rogers and U.S. Silica entered into a settlement agreement and the appeal was withdrawn.

64 S.Ct. 232, 88 L.Ed. 239 (1943). "[U]nder the FELA, 'plaintiffs are still required to prove traditional common law elements of negligence: duty, breach, foreseeability, and causation.'" *Brown v. CSX Transp., Inc.*, 18 F.3d 245, 249 (4th Cir.1994) (quoting *Robert v. Consolidated Rail Corp.*, 832 F.2d 3, 6 (1st Cir.1987)); *see also Lyles v. Alabama State Docks Terminal Ry.*, 730 So.2d 123, 124 (Ala.1998) ("To prevail in a FELA action, the plaintiff must prove the traditional common-law elements of negligence: duty, breach of duty, foreseeability, and causation.").

> The [history] has been said to reduce the extent of the negligence required, as well as the quantum of proof necessary to establish it, to the "vanishing point." While it is still undoubtedly true that there must be some shreds of proof both of negligence and of causation, and that "speculation, conjecture, and possibilities" will not be enough, there appears to be little doubt that under [FELA] jury verdicts for the plaintiff can be sustained upon evidence which would not be sufficient in the ordinary negligence action.

*Norton v. Norfolk Southern Ry. Co.*, 341 S.C. 165, 533 S.E.2d 608 (2000) (quoting W. Page Keeton et al., *Prosser & Keaton on Torts* § 80, at 579) (alterations in original).

Rogers does not allege he was injured by any activity or instrumentality of Norfolk. Rather, he contends Norfolk sent him to an unreasonably unsafe place to work. "Under the FELA, an employer has a nondelegable, continuing duty to exercise reasonable care in furnishing its employees a safe place to work." *Norfolk Southern Ry. Co. v. Trimiew*, 253 Va. 22, 480 S.E.2d 104, 106 (1997); *see also Crawford v. Norfolk & W. Ry. Co.*, 901 S.W.2d 252, 254 (Mo.Ct.App.1995); *McGraw v. Norfolk & W. Ry. Co.*, 201 W.Va. 675, 500 S.E.2d 300 (1997). "This duty exists even when the employees are on the premises of a third party over which the employer has no control." *Schrier v. Indiana Harbor Belt R. Co.*, 102 Ill.App.3d 855, 58 Ill.Dec. 262, 430 N.E.2d 204, 207 (1981) (citations omitted).

The duty of providing a reasonably safe place to work does not require the elimination of all dangers, but it does require the elimination of the dangers which could be removed by the exercise of reasonable care on the part of the employer. *Crawford*, 901 S.W.2d 252. The employee needs only to show

that he was injured because of an unsafe condition that could have been reasonably removed by the employer, and that the employer's negligence played any part, even the slightest, in producing the employee's injury. *See* Federal Employers' Liability Act, 45 U.S.C. § 51, *et seq.; Kaminski v. Chicago River & Indian R. Co.,* 200 F.2d 1 (7th Cir.1952); *Trimiew,* 480 S.E.2d at 106 ("... plaintiff's proof must justify with reason the conclusion that an employer's negligence played any part, even the slightest, in producing the injury for which damages are sought.").

Norfolk contends that it had no knowledge, actual or constructive, that the underground slurry pipe which caused the hole was installed beneath U.S. Silica's spur track[6], and, therefore, was not negligent in sending Rogers to the site. We agree with Norfolk.

Reasonable foreseeability of harm is an essential ingredient of FELA negligence. "[The railroad] may not be held liable if it had no reasonable way of knowing that the hazard, which caused [the plaintiff's] injury, existed." *Brown,* 18 F.3d at 250. "Thus ... the plaintiff must show circumstances which a railroad, in the exercise of due care, could have reasonably foreseen as creating a potential for harm." *McGraw,* 500 S.E.2d at 305. "Whether a particular danger was foreseeable ... is a fact issue and, 'as with all factual issues under the FELA, the right of the jury to pass on this issue must be liberally construed.'" *Id.* (quoting *Syverson v. Consolidated Rail Corp.,* 19 F.3d 824, 826 (1994)). However,

under the FELA, the weight of the evidence must exceed a scintilla before the case properly may be left to the jury's discretion. (Citations omitted). If, without weighing the credibility of the witnesses, the evidence supports "but one reasonable conclusion as to the verdict," the court should decide the matter, thus saving the result "from the mischance of speculation over legally unfounded claims."

---

**6.** The evidence in the record establishes without contradiction that U.S. Silica owns and maintains this spur track. Norfolk used the track to reach the industry from its main line. Norfolk's inspections of the track only involved looking for problems with the track that would make the railroad car derail, such as making sure the distance between the rails (or the gauge) was proper.

*Trimiew*, 480 S.E.2d at 108 (quoting *Stover v. Norfolk & W. Ry. Co.*, 249 Va. 192, 455 S.E.2d 238 (1995) (quoting *Brady*, 320 U.S. at 479–80, 64 S.Ct. 232)).

In its order addressing Norfolk's post-trial JNOV motion, the trial court found Norfolk had constructive notice of the slurry pipes underneath the spur tracks at the U.S. Silica plant. The court determined that Norfolk was familiar with railroad industry standards promulgated by the American Railroad Engineering Association (AREA). These standards require portions of pipes running under railroad tracks to be encased and require industries to notify a railroad if they want to install pipes beneath any track whether owned by the railroad or the industry. Additionally, the court determined Norfolk was "surely aware of the nature of U.S. Silica's slurry operations" at the plant site because track supervisors had inspected the tracks at the site before. The court concluded that "[t]hese facts alone provide sufficient basis to infer that Norfolk Southern had constructive notice of the presence of slurry pipes underneath the spur track at the U.S. Silica plant," and therefore, the jury could infer that Norfolk had breached its duty of ordinary care by failing to inquire about the encasement of these pipes.

However, there is no indication from the record that Norfolk had any reason to know that U.S. Silica had slurry pipes running under its spur tracks, much less that these pipes were not encased as required by the AREA standards and by general engineering standards. Even when the conductor found the hole on the afternoon in question, none of U.S. Silica's personnel made any mention of the slurry pipes below the tracks or that such a pipe under the track had burst two days before this incident. Norfolk cannot be expected to know the operational details of a sand plant or of the placement of pipes it did not know even existed.

 We hold it was not reasonably foreseeable that Rogers would be injured by inspecting the track or a hole under the tracks at this location. Unless a Norfolk employee saw or knew of the prior pipe leaks, or at least knew that pipes were in the ground beneath the tracks, it is impossible for Norfolk to have had actual or constructive knowledge of any danger at this location. "Events too remote to require reasonable previ-

sion need not be anticipated." *Brady,* 320 U.S. at 483, 64 S.Ct. 232.

Additionally under the FELA, an employer's " '. . . conduct may become unreasonable if the employer, after being informed that a condition is potentially dangerous, fails to investigate' and, if necessary, correct the problem." *Gallose v. Long Island R. Co.,* 878 F.2d 80, 85 (2ᵈ Cir.1989) (quoting *Mohn v. Marla Marie, Inc.,* 625 F.2d 900, 902 (9ᵗʰ Cir.1980)).

> The employer must conduct proper inspections to discover dangers in places where employees are required to work, and must take reasonable precautions for the employees' safety after determining the existence of such dangers. But even under the FELA, an employee still must establish that the employer was guilty of some act of negligence in order to recover.

*Trimiew,* 480 S.E.2d at 106 (citations omitted). The degree of care a railroad must exercise is "commensurate with the danger reasonably to be anticipated." *Atlantic Coast Line R. Co. v. Dixon,* 189 F.2d 525, 527 (5ᵗʰ Cir.1951).

Rogers was Norfolk's investigator and the Norfolk employee most familiar with the U.S. Silica site.[7] In fact, Rogers was sent to inspect the hole on U.S. Silica's property and determine the dangerousness of the work site. Rogers was not required to disregard any of his doctor's earlier recommendations about limiting his physical activities in his position as investigator. Given Norfolk's lack of knowledge concerning the nature of the hole, it could not have provided Rogers with any warnings that would have prevented the harm to Rogers.

Finally, Rogers asserts Norfolk was negligent in failing to procure U.S. Silica's execution of the railroad's standard sidetrack agreement. Norfolk's predecessor repeatedly asked U.S. Silica's predecessor to execute the sidetrack agreement, but the agreement was never signed. Rogers maintains U.S. Silica's and its predecessor's refusal to execute the sidetrack

---

**7.** In fact, Rogers had inspected this spur tract on numerous prior occasions. Rogers testified that he had visited the site approximately once a month since he was assigned to the territory eighteen months before his injury.

agreement should have given Norfolk constructive notice that U.S. Silica was not complying with the AREA standards. However, Norfolk had no reason to suspect that U.S. Silica's refusal to sign the sidetrack agreement stemmed from its failure to encase the pipes below the tracks in blatant violation of the industry's standards.[8]

Rogers also maintains, absent the sidetrack agreement, U.S. Silica was under no obligation to comply with the railroad's standards. When cross-examined by U.S. Silica's attorney, Rogers's expert at trial agreed that U.S. Silica was under no obligation to abide by the AREA standards if Norfolk never required that they do so. In closing argument, Rogers argued that if Norfolk had refused service until the sidetrack agreement was signed, U.S. Silica would have signed the agreement. Rogers maintains that if U.S. Silica had signed the agreement, it would have abided by the regulations and encased the pipes, thereby avoiding Rogers's injury. Therefore, Rogers argues, it was negligent for Norfolk to provide services to U.S. Silica when it had no assurances that the spur track would be operated in accordance with railroad regulations. Rogers further argues his injury would have been avoided if Norfolk had refused to operate the spur track until the sidetrack agreement was executed. We disagree.

Even if Norfolk should have insisted that U.S. Silica execute the sidetrack agreement, the causal connection between Norfolk's failure to do so and Rogers's injury is extremely tenuous. The evidence showed U.S. Silica knew about the railroad's regulations, but still failed to comply with them. U.S. Silica's former plant manager, George Foster, testified he knew the company was supposed to notify the railroad before putting pipes under the tracks. He also testified to knowing that, under the railroad's rules, pipes going under industry tracks should be encased. Furthermore, encasing pipes which are located below traversed areas is not just a railroad indus-

---

8. Correspondence from U.S. Silica's predecessor to Norfolk's predecessor indicates that the industry's failure to execute the sidetrack agreement was unrelated to the unencased pipes below the spur tracks. According to the correspondence, the industry wanted the railroad to modify the paragraphs in the sidetrack agreement addressing use of the spur track by third parties, close clearances, indemnification of the railroad's mistakes, and the right to repair the track.

try standard, but is a general principle of civil engineering according to Rogers's expert. It is improbable that U.S. Silica would have complied with the standards of the sidetrack agreement if it had been executed. The execution of the sidetrack agreement would have established Norfolk's right to indemnification pursuant to the agreement.[9] It would not have provided Norfolk with any additional assurance that U.S. Silica would abide by the railroad's standards. *See Norton v. Norfolk Southern Ry. Co.*, 341 S.C. 165, 533 S.E.2d 608 (2000) (quoting W. Page Keeton et al., *Prosser & Keaton on Torts* § 80, at 579) ("[T]here must be some shreds of proof both of negligence and of causation, and [ ] speculation, conjecture, and possibilities [are] not [ ] enough."). Because there is no causal connection between Norfolk's failure to get U.S. Silica to sign the sidetrack agreement and Rogers's injury, Norfolk has not been shown to be negligent.

## CONCLUSION

Considering the evidence in the light most favorable to Rogers, the only reasonable inference that can be drawn from the evidence in the record is that there was no negligence on the part of Norfolk. Therefore, the trial court erred in denying Norfolk's motion for judgment notwithstanding the verdict.[10]

For the foregoing reasons, the order of the circuit court is

**REVERSED.**

GOOLSBY and CONNOR, J.J. concur.

---

**9.** *Cf. Illinois Cent. Gulf. R. Co. v. Crown Zellerbach Corp.*, 859 F.2d 386 (5th Cir.1988); *Cazad v. Chesapeake and Ohio Ry. Co.*, 622 F.2d 72 (4th Cir.1980); *Missouri Pac. R.R. Co. v. International Paper Co.*, 618 F.2d 492 (8th Cir.1980).

**10.** Because of the disposition of the above issue, we find it unnecessary to address Norfolk's remaining issues on appeal.